### RUDOLPH WURLITZER CO. v. SHEPPY.

(Circuit Court, N. D. Illinois, E. D. October 24, 1907.)

No. 28,428.

PATENTS—INFRINGEMENT—PHONOGRAPH TONE-REGULATOR.
   The Robinson patent, No. 831,188, for a phonograph tone-regulator, which consists of an independent device adapted to be inserted between the parts of a phonograph sound-conveyer, discloses invention, and is valid. Also, *held*, infringed.

In Equity. On final hearing.

Cheever & Cox, for complainant.

Frederick Benjamin, for defendant.

KOHLSAAT, Circuit Judge. This suit is brought to restrain defendant from infringing patent No. 831,188, granted to Eugene M. Robinson, September 18, 1906, for phonograph tone-regulator, upon an application filed December 30, 1905. This application is a division of an application for a patent for an improvement in phonographs, being a device for reducing the volume of sound waves passing through the horn of a phonograph, which patent was issued to complainant's assignor February 27, 1906, and numbered 813,670. This latter patent expressly provides that the device of the patent in suit is reserved for the application and patent in suit. The claims read as follows, viz.:

"1. In a phonograph in combination with a record, a reproducer in operative connection therewith and a sound-conveyer attached to said reproducer, a valve-plate mounted adjacent to said sound-conveyer in a plane substantially at right angles thereto adapted to be moved into and out of the path of sound waves within the sound-conveyer to open and close said passageway, a rack upon the plate a pinion meshing with said rack and means for rotating said pinion, whereby said plate may be given a gradual motion in either direction between its two adjustable positions.

"2. A sound-modifier, consisting of a supplemental plate adapted to be secured between two parts of a phonograph sound-conveyer, there being a hole in said supplemental plate adapted to register with the sound wave passageway through the sound-conveyer and a valve-plate mounted in a recess in said supplemental plate adapted to be moved edgewise in the plane of the supplemental plate between two different positions to open and close said hole in the supplemental plate.

"3. A sound-modifier, consisting of a supplemental plate, adapted to be secured between two portions of a phonograph sound-conveyer, there being a hole in said plate adapted to register with the passageway for sound waves through the sound-conveyer and a valve-plate slidably mounted in a recess in said supplemental plate adapted to be moved edgewise in the plane of the supplemental plate backward and forward between two different positions to open and close said hole in the supplemental plate.

"4. A sound-modifier consisting of a supplemental plate, adapted to be secured between two portions of a phonograph sound-conveyer, there being a hole in said plate adapted to register with the passageway for sound waves through the sound-conveyer and a valve-plate slidably mounted in a recess in said supplemental plate adapted to be moved backward and forward in the plane of said plate between two different positions to open and close said hole in the supplemental plate, and a slow-motion device for moving said valve-plate backward and forward between its two positions.

"5. A sound-modifying device comprising a relatively fixed base-plate provided with a sound-conveying opening and provided with means for securing the said plate within a sound-conveyer, a valve-plate adjustably mounted upon said fixed plate and means operable from without said conveyer for adjusting the position of said valve-plate relatively to the opening in said fixed plate."

Manifestly, the device of the patent in suit is covered in general terms by the specifications of the former patent, as well as by the drawings thereof, and might, seemingly, have been made the subject of a claim under that patent. Had it not been reserved as above set out, nor claimed in the former patent, it would fairly have been abandoned to the public. Defendant applied for a patent on December 11, 1905, 19 days prior to the filing of the application for the patent in suit, for improvements in sound-boxes for talking machines, and an interference was declared. Defendant, among other things, insisted that complainant's patent covered only a sound-limiting device located in or close to the horn of the phonograph, while his invention related to means for controlling the volume of sound produced in the sound-box. The examiner rightly held that, while Robinson's claims, as originally presented, in patent No. 831,188, did not in terms cover a sound-regulator, located in the sound-box, yet his drawings did include such a device, and his claims should properly be made to meet the drawings. The drawings of patent No. 813,670 clearly disclose both the horn and the sound-box locations. Defendant acquiesced in the decision of the Patent Office, and limits his defense to invalidity and noninfringement.

Regulation of sound in phonographs is not new in the art. As early as August 12, 1892, Worthington took out patent No. 706,627, for enlarging, diminishing, or entirely cutting out the chamber between the speaking attachment and the horn. The purpose of his invention, it is stated, "is to provide an exceedingly simple and cheap attachment for phonographs by means of which the character of musical or articulated tones may be reproduced substantially as in the original." The tone-regulator is adjacent to, if not in, the sound-box. It differs in form and method of adjustment from that of the patent in suit. Much more in point is the French patent to the Perret & Lenglet Company on July 29, 1902, "for the reproducing diaphragm with regulated tonality for phonographs." It calls for a tone-regulating disc, in conjunction with a sound slot, so arranged as to permit the full volume of sound to pass into the horn when their openings coincide, and

to be diminished as the coincidence grows less and less, up to a total closing of the sound slot. The disc is operated by a thumb screw. A cylindrical revolving regulator is shown as a modification. This device seems to be the equivalent of the swinging shutter of Fig. 7 of the patent in suit, so far as its operation is concerned. Complainant's alleged invention consists of a tone-modifier, which is "adapted to be secured between two parts of a phonograph"; that is, it is a separate article of commerce, sold separately from other elements of the phonograph, and so made as to be adjusted to phonographs not already provided with a tone-modifying arrangement.

Following the interference proceedings, defendant was granted a patent, numbered 843,042, the claims of which are narrow and set out the sound-modifying device as a part of the sound-box or of the phonograph, and not as an independent and adjustable article. A wider construction of its claims would bring it into infringement of the patent in suit. Complainant concedes that it does not conflict with its patent. The distinctions seem to be very nice, however. Be that as it may, defendant is before the court as an infringer, if complainant's patent is valid. He, too, manufactures the very article which the examiner gave to complainant, in which decision he acquiesced, i. e., an independent device, adapted to be inserted between the parts of a phonograph sound-conveyer. He defines the difference between his device as originally claimed, to consist in the fact that:

"In the French patent, the tone-regulating device would have to be sold with the reproducer, whereas, in my invention, it could be applied as a separate portion."

In view of both the patents cited from the prior art, I am of the opinion that the same would be true with regard to the patent in suit. Unless patentable novelty can be found in complainant's device as a separate article of commerce, and its adaptability to phonographs removably, it falls short of invention. It is significant that more than three years were allowed to elapse after the Worthington and the French patents were granted before complainant's device was conceived. Undoubtedly, it was a desirable article, and this delay is very persuasive evidence of invention. Furthermore, the phonograph is a very mysterious and delicate instrument, so that every advance in its efficiency must of necessity be slight, physically. Every improvement which serves to make it more available to the public should be given grave consideration by the courts. The degree of invention involved in constructing the device of the patent in suit is, in itself, slight, but in its effect on the art it is very considerable. I am of the opinion that it has patentable merit.

The prayer of the bill is granted.